THE HARDING PAPER COMPANY, Appellant, vs. ALLEN, Receiver, etc., Respondent.

*March 3 — March 16, 1886.*

*Sale of chattels: Stoppage* in transitu: *Debtor and creditor: Abandonment of purchase: Receiver: Court and jury.*

The evidence in this case is *held* not to show conclusively that the goods in question had come to the possession of the vendee in such a way as to prevent the vendor from exercising his right of stoppage *in transitu,* or as would prevent the purchaser from returning them to the vendor, as against the representative of its creditors; and the question whether it was not the intent of all parties, the vendor, vendee, and the receiver of the latter, that all claim of the vendee under the original contract of purchase should be abandoned and another sale made to the receiver, should have been submitted to the jury.

APPEAL from the County Court of *Milwaukee* County. The case is stated in the opinion.

For the appellant the cause was submitted on the brief of *Chas. M. Bice.*

For the respondent there was a brief by *Shepard & Shepard*, and oral argument by *Mr. Chas. E. Shepard.* To the point that no right of stoppage remains after the goods are in the hands of the carrier *as warehouseman*, holding them for the consignee, they cited Benjamin on Sales (2d ed.), 305, 697, 707–15; *Wilmshurst v. Bowker*, 2 Man. & G. 792; *Lickbarrow v. Mason*, 4 Bro. P. C. 57; *James v. Griffin*, 2 Mees. & W. 623; *Jackson v. Nichol*, 5 Bing. N. C. 508; *Hitchcock v. Covill*, 20 Wend. 167; *Mottram v. Heyer*, 1 Denio, 483; 1 Parsons on Cont. 603–4; *Allan v. Gripper*, 2 Cromp. & J. 218; 2 Tyr. 217; *Foster v. Frampton*, 6 Barn. & C. 107; *Scott v. Pettit*, 3 Bos. & Pul. 469; *Wentworth v. Outhwaite*, 10 Mees. & W. 436; *Sawyer v. Joslin*, 20 Vt. 172; *Ellis v. Hunt*, 3 Term, 467.

TAYLOR, J. The appellant brought an action in the county court of Milwaukee county to recover of the respondent the purchase money for a quantity of paper, which the appellant claims to have sold to the respondent. On the trial in the county court the learned county judge directed a verdict in favor of the respondent. From the judgment entered upon such verdict the plaintiff appeals to this court, and alleges as error the direction of a verdict for the defendant.

The appellant and plaintiff in the court below claims to have sold to the receiver, *George W. Allen*, as such receiver, the paper described in the complaint, and also alleges a promise on the part of the defendant, as such receiver, to pay for the same. The facts in the case are substantially as follows:

Some time in the spring or summer of 1884 the Hamilton

Bros. Company, doing business in the city of Milwaukee, ordered a quantity of paper from the appellant company; as the defendant claims, to be paid for in ten days after the receipt of the invoice for the same, and, as plaintiff claims, to be paid for on delivery. The plaintiff forwarded according to the defendant's order a part of the paper to Milwaukee, and a part to Chicago. That ordered to Milwaukee came upon the Chicago, Milwaukee & St. Paul Railway, and arrived at the depot of the company in Milwaukee on the 13th or 14th of August, 1884, and remained in the depot or freight warehouse in Milwaukee until September 3, 1884, when it was delivered to the defendant as receiver, etc. The other parcel of goods was delivered about the same time, by order of the receiver or of the Hamilton Bros. Company, to a merchant in Chicago.

On the 30th of August, 1884, *Allen* was appointed receiver of the Hamilton Bros. Company, and on that day took possession of the property of said company as such receiver, the company then being insolvent. On the 31st of August, the following letter was written and mailed to the plaintiff, and was received by the plaintiff either on the evening of the 1st of September or morning of the 2d of September, 1884:

"Milwaukee, August 31, 1884.

"*To Harding Paper Company* — Gents: On motion of Gen. Hamilton, a receiver was yesterday appointed for Hamilton Bros. Co., who is now in possession. The papers from you, August 5th, are not yet received. We need them very much, and wish you would forward them immediately. Order them delivered to *Geo. W. Allen*, receiver, who will remit you upon receipt.

"Yours truly,        C. H. Hamilton."

The evidence shows that the goods were taken from the warehouse in Milwaukee, and delivered to the receiver on the 3d of September, 1884, without any express direction of

the plaintiff; that an invoice for the goods had been sent by the plaintiff, dated August 5, 1884, and had been received by due course of mail by the Hamilton Bros. Company; that the paper arrived, as stated, at the depot in Milwaukee on the 13th or 14th of August, but it seems that the fact of its arrival had either not been communicated to the company, or if it had been, it had been mislaid and forgotten, as is evident from the correspondence between the parties. In reply to a letter from the plaintiff, the receiver sent the following letter:

" Geo. W. Allen, Receiver for Hamilton Bros. Co.

"Milwaukee, November 7, 1884.

" To Harding Paper Co., Franklin, Ohio — Gents: We have traced up matter of your bill of August 5, 1884, for $129.85, and find it came September 3, 1884, and I received them in stock, and will pay for that bill; but I cannot find any trace of the bill of August 16, 1884, for $66.25, as having been received by the firm of Hamilton Bros. Co., and we have no record of its coming into my hands since August 30, 1884. Will you trace from your end and see who did receive it.

"Geo. W. Allen, Receiver Hamilton Bros. Co."

It is admitted that the letter of the 7th of November was written by authority of the receiver, but it is claimed that the letter written by C. H. Hamilton on the 31st of August was not authorized by the receiver. The evidence shows that C. H. Hamilton had charge of the ordering of goods for the firm of Hamilton Bros. Company, and that he was afterwards retained in the employ of the receiver, and ordered goods. Amongst other things, C. H. Hamilton testified: " I wrote the letter of August 31st because the goods were absolutely necessary to fill certain orders, part of which had been filled, and I supposed if the goods arrived in the future, and it was generally necessary we should have them, Mr. Allen would pay for them. Mr.

*Allen* may have had knowledge of it [the letter of August 31st] shortly after, but not at the time. I myself usually selected the paper that went into the business after the receiver was appointed. *Allen* practically left the whole business to me of selecting the paper, and to decide what was necessary to be bought." The evidence does not disclose by whose order the goods were taken from the warehouse and delivered to the receiver.

The agent of the plaintiff testifies that the letter written on the 31st of August was received by the company on the 1st day of September, and that the company did not undertake to stop the goods *in transitu* because of the receipt of the same; that there was plenty of time to have done so after the receipt of the letter, and before the time they were delivered to the receiver on the 3d of September. There was evidence tending strongly to show that the railroad company notified the Hamilton Bros. Company of the arrival of the goods on the 14th of August in the usual way of doing business, but it is also quite apparent that if such notice was in fact given the fact had been entirely forgotten by the company and its employees, except one of them, who was not in the city after the notice was given much of the time until after the receiver was appointed, and no entry was made of the notice in the books of the company, and the notice itself was not preserved by the company.

In this state of the proofs we think the learned county judge erred in directing a verdict for the defendant. The learned counsel for respondent urges that the direction of the court was right, upon the following grounds: (1) that the evidence shows that the goods had been sold and delivered to the Hamilton Bros. Company before the receiver was appointed, and so the title passed to the receiver immediately upon his appointment, and therefore his promise to pay for them was without consideration and void; (2) that there is no evidence in the case to sustain the claim that the

goods were sold to the receiver by the plaintiff; and (3) that the receiver had no authority to buy any such goods, and consequently a promise by him to pay for them could not bind the assets in his hands, or him in his character as receiver; and if the plaintiff could recover at all upon the sale to him, the action should have been against *George W. Allen*, and not against him as receiver.

The last position taken by the learned counsel is clearly not tenable for several reasons: (1) the complaint alleges that the receiver was authorized to carry on the business of the company, and that allegation is not denied by the answer; (2) the plaintiff offered to show, by the production of the order appointing him, that he had authority to buy goods. This offer was ruled out; but for the purpose of deciding this point, it must be treated as in evidence, and showed such authority; and, in addition, the evidence shows that he did buy other goods of the kind claimed to have been sold to him by the plaintiff as receiver. If it was material to the plaintiff's case to show the authority of the receiver to buy goods in his capacity as receiver, then it was error to exclude the offer to show that fact by the order of the court appointing the receiver. But, as said above, we think that fact is sufficiently shown by the evidence and the pleadings.

It is said there is no evidence to sustain a sale to and purchase by the receiver. We think there is at least evidence tending to prove such sale and purchase, and the question should therefore have been submitted to the jury. The letter of the receiver written more than two months after his appointment as such receiver, and after his receipt of the goods, tends strongly to prove a sale and purchase. He says: "I find that on the 3d of September [four days after his appointment as receiver] these goods were received by me in stock, and I will pay for them." Here is no intimation that they came to him as a part of the stock which

he took by virtue of his appointment as receiver, and it is evident that he did not then so understand it. Had he so understood the matter, there would have been no more reason for his promise to pay for them than for any other goods which he had received by virtue of his appointment. Had there been any claim that these goods were a part of the stock he took by virtue of his appointment, it would seem that the receiver ought to have known it at the time he wrote this letter. When the goods were taken from the warehouse of the railway company on the 3d of September, the receipt given ·by the company to the receiver for the charges, and as evidence of the delivery of the goods to him, showed on its face that they had been in the hands of the company ever since the 14th of August. Still, on the 7th of November he treats them, not as a part of the original stock of the company coming to his possession as receiver, but as bought by him as receiver. Again, if these goods were a part of the stock of the Hamilton Bros. Company at the time the receiver was appointed, how does it happen that C. H. Hamilton, who was, as appears from the evidence, the person who ordered this kind of goods for the company, did not know that the goods were a part of the stock on hand when the receiver was appointed?

It is clear enough from the evidence that those who represented the Hamilton Bros. Company did not understand, at the time the receiver was appointed, that the goods in question belonged to the company, nor did they treat them as belonging to the company in any way; and it is evident from the letter of the receiver of November 7th that when they were delivered to him they were not delivered to or accepted by him as part of such stock. But it is claimed that the evidence is conclusive that the goods had been sold by the plaintiff, and delivered to and received by the Hamilton Bros. Company, before the appointment of the receiver, and so became a part of the property which the

receiver took by virtue of his appointment as such; and that his promise to pay for them, in the belief that he had purchased them, is void for want of consideration. This position of the respondent is controverted by the learned counsel for the appellant upon two grounds: (1) it is claimed that the goods were sold for cash, to be paid for on delivery; and (2) that if they were not to be paid for in cash on delivery, still the goods had not been paid for nor received by the Hamilton Bros. Company when the receiver was appointed, on the 30th day of August, 1884, when it is admitted the company was insolvent, and that the plaintiff had the right of stoppage *in transitu;* and that in either case, if the receiver took the goods, his promise to pay for them would bind him as receiver.

Upon the question as to when payment should be made the evidence is somewhat conflicting, and, as it is unnecessary on this appeal to determine whether the sale was for cash on delivery, or whether, as the defendant claimed, it was cash ten days after the date the invoice was received, we do not determine whether the court erred in declining to submit this question to the jury.

Upon the other point, that the goods had been so delivered to and received by the Hamilton Bros. Company on the 30th of August, 1884, that the plaintiff had lost its right of stoppage *in transitu,* we are of the opinion that the evidence is not conclusive in favor of the defendant upon that question. It is true, they had arrived at their destination at Milwaukee, and the evidence tends to show that the Hamilton Bros. Company had been notified, by the carrier, of their arrival, and was requested to take them away; and that, in case they were not taken away, they would be stored at its expense. To this notice no attention was given by the Hamilton Bros. Company, and the fact that such notice had been given was forgotten and wholly ignored by the

company.   Under that state of facts it seems to us that the Hamilton Bros. Company, when they became insolvent and placed their assets in the hands of a receiver for the benefit of their creditors, had the right, as against such creditors, to return the goods to the vendor, or permit him to take them because not paid for; and there is certainly evidence in the case to show that the company consented to the retention of the goods by the vendor.   The letter of C. H. Hamilton is evidence tending to establish that fact.   Though he may not have been the agent of the receiver for that purpose, the evidence shows that he was the agent of the Hamilton Bros. Company.   He ordered the goods for the company, and, in the absence of proof to the contrary, it may be presumed he had the right to surrender the same goods to the vendor after the company became insolvent, and they had not been paid for or received into the actual possession of the company.

The rule laid down by Benjamin in his work on Sales is stated as follows: " If the possessor of the goods has the intention to hold them for the buyer, and not as an agent to forward, and the buyer intends the possessor so to hold them for him, the *transitus* is at an end; but I apprehend that both these intents must concur, and neither can the carrier, of his own will, convert himself into a warehouseman so as to terminate the *transitus*, without the agreeing mind of the buyer; nor can the buyer change the capacity in which the carrier holds possession, without his assent, at least until the carrier has no right whatsoever to retain possession as against the buyer."   Benjamin on Sales (2d ed.), 788.   The learned author cites, to sustain this rule, *James v. Griffin*, 2 Mees. & W. 623; *Jackson v. Nichol*, 5 Bing. N. C. 508; *Bolton v. L. & Y. R. Co.* 35 Law J. C. P. 137; *Whitehead v. Anderson*, 9 Mees. & W. 529; *Grout v. Hill*, 4 Gray, 361; *Naylor v. Dennie*, 8 Pick. 198; *Stubbs v. Lund*, 7 Mass.

453; and many other cases. The rule above laid down by Benjamin is the rule adopted by this court in *Hoover v. Tibbits,* 13 Wis. 79, and *Sherman v. Rugee,* 55 Wis. 346.

Under this rule, we are clear that the evidence does not show conclusively that the goods in question had come to the possession of the vendee in such way as to prevent the vendor from exercising his right of stoppage *in transitu,* or as would prevent the purchaser from returning them to the vendor, as against the representative of its creditors. We think there is at least evidence sufficient to carry the case to the jury whether it was not the intent of all parties, the vendor, the vendee, and the receiver, that all claims to the goods under the original contract of purchase by the Hamilton Bros. Company was abandoned and another sale thereof made to the receiver; and the facts should have been submitted to the jury, and it was error to direct a verdict for the defendant.

*By the Court.*— The judgment of the county court is reversed, and the cause is remanded for a new trial.