STATE OF MAINE

*vs.*

INTOXICATING LIQUORS,

MAINE CENTRAL RAILROAD COMPANY, Claimant.

Androscoggin.　　Opinion December 1, 1908.

*Intoxicating Liquors.　Common Carrier.　Constructive Delivery.　Interstate Commerce.　" Wilson Act."*

The rule is well established that a constructive delivery of goods by a carrier can be effected only by an agreement between the carrier or middle man and the buyer or person claiming under him whereby the former agrees to hold the goods for the latter for some purpose other than that of carriage to and delivery at their original destination. In the absence of an agreement with the buyer to the contrary, the carrier will be presumed to hold the goods in his original capacity. The carrier cannot constitute himself the buyer's agent for the custody of the goods, nor can the buyer make the carrier his agent for custody without the carrier's consent.

The relation of carrier to the shipper, the consignee and the goods is originally fixed by law and by a contract between the parties, which is that the carrier shall safely carry the goods to their place of destination and there deliver them to the consignee. This contract once existing can be changed only by the operation of law or by an agreement between the parties. When the goods arrive at their journey's end, it is the duty of the carrier to store them. This duty is imposed by law. When stored they are still in the possession and custody of the carrier and the only change in his relation to the goods is the extent of his liability. The goods are still in transit. The contract is still binding upon the carrier to deliver the goods to the consignee, and this obligation can be terminated only by actual or constructive delivery or by a new contract with the consignee in the place of the contract of carriage.

Certain intoxicating liquors were shipped from different points without the State, arriving at different times by way of the Maine Central Railroad at its freight station in the city of Lewiston. All the liquors were shipped in the names of local firms who did not order nor claim them, or to fictitious names, persons to the railroad company unknown. The various liquors upon their arrival were placed in the freight shed of the railroad company and from time to time thereafter were seized upon proper warrants charging the liquors to be deposited within the State for the purpose of illegal

sale. The longest time any package was in the custody of the railroad company after its arrival at Lewiston, before seizure, was a period of 24 days.

*Held:* (1) That the evidence was not adequate to establish proof of constructive delivery. (2) That the liquors at the time of their seizure were in transit as interstate commerce in the hands of the carrier.

On report. Judgment for claimant.

Seven search and seizure cases where certain intoxicating liquors shipped from different points without the State, were seized from time to time while in the freight shed of the Maine Central Railroad Company in Lewiston, Androscoggin County, on warrants issued by the Municipal Court of Lewiston charging that the liquors were deposited within the State for the purpose of illegal sale.

The seized liquors were all duly libeled and at the hearings on the libels the Maine Central Railroad Company appeared and claimed the liquors. In each case the Municipal Court held that the seizure was legal and declared the liquors forfeited. The claimant then appealed to the Supreme Judicial Court, in said county. The cases all came on for hearing at the September term, 1907, of said court, at which time an agreed statement of facts was filed in each case and by agreement all the cases were reported to the Law Court, the stipulations, in each case, being as follows: "This case is reported to the Law Court upon the foregoing agreed statement of facts. If upon the material facts therein stated the court shall decide that said liquors were liable to seizure and forfeiture, the judgment of the lower court is to be affirmed ; otherwise judgment is to be rendered for the claimant and said liquors ordered to be returned." The cases were all considered together by the Law Court.

The facts, so far as material, are stated in the opinion.

*Frank A. Morey*, County Attorney, for the State.

*White & Carter*, for claimant.

SITTING : EMERY, C. J., WHITEHOUSE, SAVAGE, PEABODY, SPEAR, CORNISH, JJ.

SPEAR, J. Seven cases are considered in this opinion, each involving the single question of constructive delivery of intoxicating

liquors by a common carrier under the so-called Wilson Act. No other question is raised either by the State or claimant of the liquors seized. The facts disclose that certain intoxicating liquors were shipped from different points without the State arriving at different times by way of the Maine Central Railroad at its freight station in the city of Lewiston. All the goods were shipped in the names of local firms who did not order nor claim them, or to fictitious names, persons to the railroad company unknown. The various invoices upon their arrival were placed in the freight shed of the defendant company and from time to time thereafter were seized upon proper warrants charging the liquors to be deposited within the State for the purpose of illegal sale. The warrants were served, the seizures made, the liquors libeled, the claimant appeared, a hearing was had, the liquors were declared forfeited and the claimant appealed. The fact that a portion of these liquors finally declared forfeited had been once seized and ordered returned on the ground that they then came within the protection of the interstate commerce clause of the Constitution, becomes immaterial in the consideration of the one issue involved. The longest time any package was in the custody of the railroad company after its arrival at Lewiston, before seizure, was a period of 24 days. The element of time makes this case the strongest for the State, as all the other elements are common to all the cases.

No question is raised that the goods seized were moving in inter-state commerce unless they had been constructively delivered to the consignees. *Heymann* v. *Southern Railroad Co.*, 203 U. S. 270 ; *State* v. *Intox. Liquors*, 102 Maine, 385.

In the Heymann case, the court intimate what facts may be regarded as sufficient to establish constructive delivery in cases of this kind. They say—"Of course we are not called upon in this case, and do not decide if goods of the character referred to in the Wilson Act, moving in interstate commerce, arrive at the point of destination and after notice and full opportunity to receive them are designedly left in the hands of the carrier for an unreasonable time, that such conduct on the part of the consignee might not justify, if affirmatively alleged and proven, the holding that goods so dealt

with have come under the operation of the Wilson Act, because
constructively delivered." In this paragraph the court seems to
have undertaken to state but not to decide the three essential
elements of constructive delivery to be, notice to the consignee of
the arrival of the goods; a reasonable time on his part after notice
to receive them, and a mutual design or arrangement with the ·
carrier to hold them for the consignee. The only evidence of con-
structive delivery in the case at bar is found in the fact that the
goods were retained by the Railroad Company without actual
delivery for a space of 24 days (giving the State the benefit of the
strongest case) and that the consignees were represented by fictitious
names and were to the claimant unknown.

In specifying the elements above named the court uses a phrase
which seems to have peculiar significance in its application to the
class of cases now under consideration, namely; "designedly left in
the hands of the carrier for an unreasonable time." This phrase
was undoubtedly intended to allude to a passive or silent under-
standing between the shippers of liquors, the carriers and the con-
signees with reference to those transactions which operate to enable
an evasion of the law and assist consignees in obtaining a safe
delivery of their contraband goods. Yet, notwithstanding this
interpretation of the phrase, if a correct one, and sufficient to
authorize the inference of constructive delivery, we are unable to
find any evidence in the statement of facts which warrants us in
declaring that the goods in question were constructively delivered.
It will be observed by a reading of the above paragraph that the
conduct which might be sufficient for the predication of constructive
delivery is ascribed to the acts of the consignee and not to the acts
of the carrier. But in the case at bar, it is not the consignee but
the carrier who is the claimant. Therefore it appears that the
elements of constructive delivery referred to in the Heymann case as
applicable to consignees are not found at all in the case at bar
against the carrier, as the consignees were fictitious.

The essential elements of constructive delivery are well defined in
law. The rule is well established that a constructive delivery can
be effected only by an agreement between the carrier or middle man

and the buyer or person claiming under him whereby the former agrees to hold goods for the latter for some purpose other than that of carriage to and delivery at their original destination. In the absence of an agreement with the buyer to the contrary, the carrier will be presumed to hold the goods in his original capacity. The carrier cannot constitute himself the buyer's agent for the custody of the goods, nor can the buyer make the carrier his agent for custody without the carrier's consent. American and Eng. Encyc. of Law, Vol. 26, page 1096, and cases cited. See also *Harding Paper Co.* v. *Allen*, 65 Wis. 584; *Jeffris* v. *Fitchburg Railroad Co.*, 93 Wis. 250; *Brewer Lumber Co.* v. *Boston & Albany Railroad Co.*, 179 Mass. 228.

The last case involved the replevin of lumber, sold by the plaintiff to George A. Paul, claimed by right of stoppage in transitu. It appears that the car of lumber was shipped January 31, 1908, and arrived at the yard of the defendant in Boston on February 19, and Paul was notified by an agent of the defendant. On March 4, the defendant stored the lumber in one of its sheds and notified Paul of this fact. On April 9, Paul made an assignment for the benefit of his creditors and on April 16, the plaintiff notified the defendant not to deliver the lumber to Paul claiming the right of stoppage in transitu. The court held that the transit of the lumber was not ended when the plaintiff asserted his right to it and that it made no difference whether the goods were in the hands of the carrier as carrier or whether the carrier at the journey's end put them in a ware-house, laying down this rule: "While the position of carrier may be changed to that of bailee or agent for the purchaser of the goods, yet this is a question of an agreement between the carrier and the purchaser." In this case it will be seen that the goods were in the hands of the carrier about two months before they were claimed by stoppage in transitu, yet the court held that there was no constructive delivery.

The relation of carrier to the shipper, the consignee and the goods is originally fixed by law, and by a contract between the parties which is, that the carrier shall safely carry the goods to their place of destination and there deliver them to the consignee.

This contract, once existing, can be changed only by the operation of law or by an agreement between the parties. When the goods arrive at their journey's end it is the duty of the carrier to store them. This duty is imposed by law. When stored they are still in the possession and custody of the carrier and the only change in his relation to the goods is the extent of his liability. The goods are still in transit. *State* v. *Intoxicating Liquors*, 102 Maine, 385. The contract is still binding upon the carrier to deliver the goods to the consignee, and this obligation can be terminated only by actual or constructive delivery or by a new contract with the consignee in the place of the contract of carriage. As already seen in the case before us, no actual delivery of the goods was made and no evidence is found adequate to establish proof of constructive delivery. Therefore, the various packages of goods seized must be held at the time of their seizure to have still been in transit as interstate commerce in the hands of the carrier.

In accordance with the stipulation in the report, the entry must be in numbers 19 to 25 inclusive,

*Judgment for the claimant.*
*Liquors ordered to be returned.*